# MARTIN v. MILLER BROS. CO. (two cases). No. 13.— 168 S. W. (2d) 187.

Eastern Section. November 27, 1942.

Petition for Certiorari denied by Supreme Court, January 30, 1943.

Joe V. Williams and Sam. H. Ford, both of Chattanooga, for plaintiffs in error.

Jas. F. Finlay, of Chattanooga, for defendant in error.

BURNETT, J. These cases were tried together. The parties plaintiffs are husband and wife. The defendant operated one of the largest department stores in Chattanooga. Parties will be designated in this opinion as they appeared in the trial court.

Mrs. Marcia E. Martin, while shopping in the store of Miller Brothers Company on March 12, 1940, fell and sustained permanent personal injuries. Her left hip was

broken as a result of the fall which incapacitated her for many months. Her husband, Joseph Martin, was caused to spend a large sum of money in an effort to cure her and he likewise lost her services at home and in his office where she worked. At the conclusion of plaintiffs' proof in chief a general motion for peremptory instructions in behalf of the defendant was overruled. Proof was thereupon offered by the defendant along with other proof of the plaintiffs. At the conclusion of all the proof the defendant again renewed its motion for peremptory instructions which motion was sustained by the court. The plaintiffs appealed to this court and a number of assignments of error are made to this action of the court. It will not be necessary to treat these assignments separately as they all go to the one question—viz.: Was the trial judge in error in directing a verdict for the defendant?

It is the theory of the plaintiffs, as alleged in their declarations as amended, that Mrs. Martin was in the store of the defendant, by implied invitation, to do some shopping. That "because of the slick, unsafe and dangerous condition of the floor, she became unbalanced, both of her feet were caused to be thrown from under her, as result of which she fell violently to the floor and was severely and permanently injured." That the floors of the defendant's store were highly polished or oiled to such an extent they became slick and slippery; that the substance used on these floors was improperly and negligently applied; that numerous other persons had been hurt in the defendant's store by slipping and falling on the slippery floors and that "an unnecessary and excessive amount of slippery slick substance thereon which was fresh" had been placed there by the defendant and had not had time to dry. That these acts of the defendant

in keeping the floors in this condition constituted a nuisance.

The defendant pleaded the general issue and a jury was impanelled to try the cases.

We will not undertake to review all the evidence but will confine this opinion to such of the evidence as is pertinent to the issues now before us.

Mrs. Martin relates her actions on the morning of the fall and says that after visiting various departments of the store which consumed about thirty-five minutes she went to the hosiery counter where her fall happened. She says: "Well, as I was going there, I presumed the floor was in perfect walking condition, I just started across there and both feet slipped out from under me, and I fell on my left side." She was then picked up and placed in a chair by employees of the store. A few minutes later she was taken to the office of her husband where a preliminary examination was made of her injuries.

The plaintiff says that after her fall and while she was lying on the floor in attempting to get up she put her hands on the floor and "it was oily and greasy, and they seemed to slide, and I couldn't make it." When she fell a spot of this oil or greasy substance was left on a coat she wore as well as on the side of her shoe. These articles were exhibited in court with the statement that the marks thereon then were as they were immediately after her fall. The spot of oil where she fell was related to be large or leaving skid marks after the fall of twelve to eighteen inches. She testified that the substance she fell in "appeared to have a greenish look." The plaintiffs likewise offered proof as to the damages and rested.

The defendant moved for a directed verdict which was overruled. The defendants then offered their proof.

Among other things, it is developed from their proof that the linoleum on the floor where the plaintiff fell was placed thereon in the year 1936. That after linoleum becomes hard or a great number of applications have been used the cleaning substance will remain on top and not absorb as readily as when new. It is testified that the substance used to clean these linoleum floors (Nutro-Gloss) is "ordinarily called liquid wax, wax not soluble in water, a solid content average liquid wax, ten to fourteen per cent." That it is widely used on floors of this kind and is applied by use of a sponge. That it ordinarily dries in twenty to thirty minutes and is not polished or buffed. The last application of this cleaner to the floors in question was made two days before the accident, i. e., on Sunday before the fall on Tuesday morning. A sample of the linoleum as used on the floor was offered in evidence and some of the Nutro-Gloss was poured on it as an exhibit to the jury. A janitor at the court house was used as a witness in reference to the application and results of Nutro-Gloss. None of the store janitors were offered. All defendants witnesses testified as to the satisfactory condition of the floors after the use of this solution. The court house janitor on cross-examination admitted that if the solution got on one's clothing after a fall that the solution was improperly applied. Mrs. Martin was recalled and testified that the Nutro-Gloss on the sample linoleum exhibited to the jury "appears to be the same" as the substance she fell in and that was on her coat and shoe. She likewise said the exhibit appeared greenish. These facts were denied by the defendant's witness. One defendant witness did say the Nutro-Gloss appeared greenish if applied to greenish linoleum. The defendant's theory was that Mrs. Martin had wet shoes and from her statements to them this was the cause of her fall.

Mrs. Martin denied this. The store detective was used by the defendants and he stated he had been working at the store for 'fifteen months. On cross-examination he admitted that in this period, with the floors in the same condition they were in on the day of the accident, ''not more than half a dozen that I know of, I don't know exactly'' had fallen on these floors.

The defendant having put testimony on, after asking peremptory instructions at the close of the plaintiffs' case, waived that motion and cannot rely on it here. This being true we must consider all the evidence adduced at the trial. Hoover Motor Exp. Co. v. Thomas, 16 Tenn. App., 664, 65 S. W. (2d), 6621; Earhart v. Hazlewood Bros., 15 Tenn. App., 454, at page 458.

In the case of Gerber Co. v. Smith, 150 Tenn (23 Thomp.), 255, 263 S. W., 974, 676, Mr. Justice Hall speaking for the Court says:

''Mr. Wigmore, in his valuable work on Evidence (1923 Ed.), at section 458, announces the following rule:

'' 'If a white powder's tendency to produce illness may be evidenced by the symptoms following its administration, then in the same way the tendency of a projecting spike in a gate to catch and tear the garments of a passerby may be evidenced by instances of such tearings. Or, the tendency on the part of the highway to make the feet trip it may be evidenced by instances . . . of precisely this form. . . . If it can be shown what that tendency is, it may then be possible to show that the maintenance of a place or machine of that tendency—that is, likely to cause such harm—is negligence.'

''In Ellis v. Cotton Oil Co., 3 Tenn. Civ. App., 642, this rule is also announced. In that case the court quoted with approval from 8 Encyc. of Evidence, 928-930, as follows:

" 'The fact that other persons have stumbled or fallen or been injured by the same defect as produced the injury in suit may, in many jurisdictions, be shown. Where the other accident occurred before the accident in suit, such evidence is admissible as showing defendant's notice of the defect. It is also admitted as tending to show the dangerous character of the defect, except in Indiana and Michigan, where it is not admissible for such purpose, and where, consequently, evidence of accidents occurring after the accident in suit is excluded. Such evidence is not, however, admissible to show other independent acts of negligence, nor to show that any prudent man might sustain injuries thereat. It is not objectionable as raising collateral issues, nor as tending to mislead the jury, nor as being in the nature of a surprise which the defendant might not be prepared to meet. But where at the time of the other accident the grounds or structure were in a different condition the evidence is incompetent.'

"In [City of] Chicago v. Jarvis, 226 Ill. 614, 80 N. E. 1079, where appellee sustained an injury by falling into a coal hole, it was held that prior falls of 10 or 11 others into said hole was properly admitted to show that the common cause of the accident was a dangerous and unsafe thing.

"In Laurie [Co.] v. McCullough, 174 Ind. 477, 90 N. E. 1014 [92 N. E. 337], where the plaintiff was injured by slipping on an oiled floor in a department store, the court said:

" 'Appellant also had a right to introduce evidence showing the length of time it has been using this floor dressing on its store floors, the extent of the use of such floors by the public under conditions substantially similar to those existing at the time appellee sustained her in-

juries, and the fact, if true, that no prior accidents had ocurred from such use.'

"This case is authority for the converse that the plaintiff may introduce evidence of prior accidents if they occurred under substantially similar conditions."

 Of course we know that the doctrine of res ipsa loquitur does not apply in this character of case. It seems to us that the fact that there have been several other similar accidents on floors in the same condition as in the case at bar is something for the jury to consider along with the other evidence. Here we have the fact of other accidents; the fact of slipping in an oily or greasy place being of the same substance that is used by the defendant in cleansing their floors. We have evidence that the substance used will not dry but remain on the surface if used on a hardened floor. We have evidence, from a purported expert in the application of the floor cleanser, that if one got this substance on his clothing after falling, the application would have been faulty or negligent. We have evidence that the floor cleanser was on the clothing after the fall in this case. It is true that this evidence herein is conflicting. This though clearly makes a question for the jury to determine.

 The janitors of the defendant were not offered by the defendant: Is it not a correct conclusion to draw that if they were offered they would testify against the contentions of the defendant? No explanation is made as to their absence. See Fisher v. Travelers' Ins. Co., 124 Tenn (16 Cates), 450, 138 S. W., 316, 318, Ann. Cas., 1912D, 1246.; Louisville etc., R. Co. v. Murray Adm'r, 6 Tenn. App., 374.

 "When a given state of facts is such as reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the mat-

ter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusions from them that the question of negligence is ever considered one of law for the court." Knoxville Traction Co. v. Brown, 115 Tenn. (7 Cates), 323, 329, 89 S. W., 319, 321. Ellis v. Memphis Cotton Oil Co., 3 Tenn. Civ. App. (3 Higgins), 642, 653, 654, 655.

■ We are not asked to weigh the evidence—nor can we do so on this motion. The question is: Is there any material evidence to support a recovery? We have concluded that there is material evidence to support the contention of the plaintiffs and that the matters should have been submitted to a jury.

The trial judge apparently felt that this case was on all fours with previous cases that had been tried by him and assigned this as his main reason for sustaining this motion. Every case of this character must stand or fall on the evidence adduced in the particular case. He refers to two of these cases. We have the opinions in the cases referred to before us. From the statement of facts in those opinions we have concluded the facts here are different to such a degree that the facts here make a jury question.

The evidence in this case falls within the rule as announced by Judge McAmis in Mollie Coffelt v. Miller Bros. Co., handed down March 8, 1939, wherein the court said:

"If plaintiff had shown the grease on the floor where she fell was of the kind customarily used in polishing floors, or that it was the same kind of material used on all or a large part of the basement floor, we think the jury would have been warranted in inferring from this fact alone that the substance which caused the plaintiff

to fall was placed there by one of the defendant's servants who negligently left an unusual amount of the substance at this particular point and thus created an unexpected and dangerous condition."

The result is that the case is reversed and remanded for a new trial. The costs of appeal will be adjudged against the defendant. The costs of the lower court will await the outcome there.

McAmis and Hale, JJ., concur.